UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                       :

DISHI & SONS,                         :

                         Appellant,  :

                                 :            13 Civ. 8300 (JPO)

                -v-                  :

                                 :        __OPINION AND ORDER__

BAY CONDOS LLC, 11 EAST 36 NOTE     :

BUYER LLC, NEW YORK PUBS, INC. d/b/a  :

THE GINGER MAN, and MUNITALP CORP.,  :

                       Appellees.  :

                                 :

-----------------------------------------------------------X

J. PAUL OETKEN, District Judge:

      Section 363(f) of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, authorizes the trustee to

sell property of a bankrupt's estate "free and clear of any interest in such property."  Section

365(h), however, provides that if the trustee "rejects" a lease of a debtor-lessor, "the lessee may

retain its rights under such lease . . . that are in or appurtenant to the real property," such as the

right to continued possession at the specified rent ("appurtenant rights").  This bankruptcy appeal

presents the question whether § 365(h) preserves the lessee's appurtenant rights even if they

could otherwise be extinguished in a § 363(f) sale.  The bankruptcy court answered in the

affirmative, apparently adopting the majority view that §§ 365(h) and 363(f) stand in conflict and

the former trumps the latter.  Alternatively, the court held that even if § 363(f) permits such a

sale, the lessee was entitled to continued possession as "adequate protection" of its interest under

§ 363(e).

      This Court reaches the same result, but declines to endorse the majority interpretation.

Although § 365(h) is applicable to § 363(f) sales, it does not give the lessee absolute rights that

take precedence over the trustee's right to sell free and clear of interests.  Rather, it clarifies that

the lessee may retain its appurtenant rights notwithstanding the trustee's rejection of the lease.

Section 363(f), in turn, authorizes the trustee to extinguish the lessee's appurtenant rights—like any other interest in property—but only if one of five conditions is satisfied with respect thereto. The two sections thus work in harmony to establish that the lessee's appurtenant rights may not be terminated by rejection and must be taken into account in any proposed free and clear sale. If § 363(f) authorizes the trustee to sell property free and clear of such rights, nothing in § 365(h) mandates a contrary result. As this case demonstrates, however, § 363(f) will rarely permit such a sale, and consequently, the lessee's rights will generally be enforceable against the transferee of the property. In any event, the bankruptcy court did not abuse its discretion in holding that the lessee was entitled to continued possession as adequate protection of its interest. Accordingly, the judgment below is affirmed.

I.      **Background**

Bay Condos LLC ("Debtor") is the owner of a 97.2% interest in two commercial condominium units ("Property") located at 11 East 36th Street, New York, New York.[1] Unit 101 is leased by New York Pubs, Inc. d/b/a The Ginger Man ("TGM"), which operates a bar on the premises. TGM's lease expires on December 31, 2015. Unit 102 is leased by JYA Cleaners, Inc. ("JYA"), which operates a laundromat. The Debtor owes 11 East 36th Note Buyer LLC ("Creditor") approximately $13.5 million, which is secured by a mortgage on the Property ("Mortgage").

On December 22, 2011, the Debtor filed a voluntary petition for relief under Chapter 11 in the Bankruptcy Court for the Southern District of New York. The Creditor filed a Chapter 11 plan on August 8, 2012, proposing in relevant part:

---

[1] The remaining 2.8% interest is owned by 11 East 36th LLC ("11 East 36th"), an affiliate of the Debtor. 11 East 36th has also filed a voluntary petition for Chapter 11 bankruptcy in a separate proceeding. 13-rg-11506.

> The transfer of the Property under the Plan shall be free and clear of all commercial leases not assumed under the Plan, liens, claims, and encumbrances. . . .
>
> The Plan deems the unexpired lease to JYA Cleaners, Inc. to be assumed under the Plan.  All other non-residential unexpired leases and executory contracts not assumed prior to the Effective Date shall be deemed rejected under the Plan, including commercial leases.

(BkD[2] No. 41 ("Initial Plan") §§ 4.1, 6.1.)  The Debtor filed its own plan on September 5, 2012, which proposed the sale of Unit 101 "free and clear of all liens, claims, taxes and non-permitted encumbrances," but provided for "the assumption and assignment of the existing lease with [TGM]."  (BkD No. 45 at 1.)

On February 19, 2013, the Creditor filed a Second Amended Plan ("Plan") and a Third Amended Disclosure Statement ("Disclosure Statement").  Like the Initial Plan, the Plan proposed the sale of the Property "free and clear" of interests, assumed the JYA Lease, and rejected all other "non-residential unexpired leases" not timely assumed.  (BkD No. 74 ("Plan") §§ 4.1, 6.1.)  The bidding and auction procedures and notice of sale similarly indicated that the sale would be "conducted pursuant to Bankruptcy Code section 363" and "free and clear of liens, claims, [and] commercial leases not assumed under the Plan."  (*Id.* at 17, 29.)  The Disclosure Statement listed the Debtor's estimated value of the Property at $4.45 million.  (BkD No. 75 § 9.)  On February 27, the bankruptcy court issued an order approving the Disclosure Statement and bidding and sale procedures, and scheduled a confirmation hearing for the Plan.  On March 4, the Creditor submitted an Amended Proof of Service reflecting that notice of the sale, plan, and hearing had been mailed to all creditors and lessees, including TGM and JYA. (BkD No. 80.)  A notice of sale was published in the New York Times on March 15.  (*Id.*)

---

[2] "BkD" refers to the docket for the bankruptcy court proceedings.  11-rg-15844.  "Dkt" refers to the docket for the instant proceedings.

Appellant Dishi & Sons ("Dishi") was the successful bidder for the Property at an April 8 auction with a bid of $6,075,000. At a hearing on May 9, the bankruptcy court approved the sale and confirmed the Plan. Before an order was entered, however, TGM submitted a letter to the court on May 14 asserting its right to retain possession of Unit 101 for the duration of its lease under § 365(h), and alternatively, as adequate protection under § 363(e). TGM claimed that it had received notice of the sale and hearing only one day earlier, on May 13, and requested that the court hold a hearing regarding its rights before entering an order.[3] (BkD No. 96.) The Creditor subsequently filed a motion seeking a determination of TGM's rights under the lease.

On September 25, after a hearing, the bankruptcy court issued the Sale Approval Order, which approved the sale to Dishi, held that TGM has a right to remain in possession for the duration of its lease at the specified rent, and confirmed the Plan. With respect to TGM's rights, the court stated two independent grounds for its holding: (i) TGM's "rights under section 365(h) . . . including, but not limited to, the right to elect to remain in possession of the Property [are] fully preserved"; and (ii) "as adequate protection for the sale of the Property free and clear of the TGM Lease, [TGM] may remain in possession of the Property pursuant to sections 361(3) and 363(e)." (BkD No. 123 ("Sale Approval Order") at 4-5.) Dishi filed a timely notice of appeal on October 8, 2013. The Court held oral argument on April 17, 2014.

## II.    Legal Standard

28 U.S.C. § 158(a)(1) grants district courts jurisdiction to hear appeals from "final judgments, orders, and decrees" of bankruptcy courts. As a "confirmation of a plan in a Chapter 11 proceeding," the Sale Approval Order is a final order subject to appeal. *In re Am. Preferred*

---

[3] The original Proof of Service submitted by the Creditor did not include the lessees as recipients of the notice, and the Debtor's Schedule of Executory Contracts and Unexpired Leases did not contain any entries, lending credence to TGM's claim that it lacked timely notice. (BkD Nos. 9 & 79; Sch. G.)

*Prescription, Inc.*, 255 F.3d 87, 92 (2d Cir. 2001) (citations omitted).  "In reviewing final decisions of bankruptcy courts, . . . [f]indings of fact are reviewed for clear error.  Legal conclusions are reviewed de novo."  *Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 474 B.R. 76, 80 (S.D.N.Y. 2012) (citations omitted).

## III.   Discussion

### A.   Applicability of Section 365(h) to Section 363(f) Sales

This case requires the reconciliation of two seemingly conflicting provisions of the Bankruptcy Code.  Section 363(f) authorizes the trustee (or debtor-in-possession)[4] to "sell property [of the estate] . . . free and clear of any interest in such property of an entity other than the estate," provided that one of five conditions is met:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.[5]

Courts have construed the broad language of "any interest" to encompass leasehold interests.  *See, e.g.*, *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 545-46 (7th Cir. 2003).  Where property is to be sold free and clear of an interest, the court must provide "adequate protection of such interest" upon request.  11 U.S.C. § 363(e).  This may entail a cash

---

[4] In Chapter 11 proceedings, the debtor will ordinarily retain possession of its assets and operations and, as the "debtor in possession shall have all the rights . . . and shall perform all the functions and duties . . . of a trustee . . . ."  11 U.S.C. § 1107(a).  Accordingly, references herein to the trustee are also references to the debtor-in-possession.

[5] Section 363 is entitled "Use, sale, or lease of property."  Subsections (b) and (c) authorize the trustee to use, sell, or lease property of the estate within or outside the course of ordinary business.  Subsection (f) is one subset or category of such sales.

payment, an additional or replacement lien, or "such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." *Id.* § 361. Thus, at least in some cases, § 363(f) appears to authorize the sale of a debtor-lessor's property free and clear of leasehold interests, and the lessee's sole recourse is to request "adequate protection," which may or may not amount to continued possession.

Section 365(h), in turn, governs the trustee's rejection of leases of a debtor-lessor. Section 365 authorizes the trustee to assume or reject unexpired leases or executory contracts of the debtor, subject to court approval. 11 U.S.C. § 365(a). Assumption, familiar from general contract law, is the trustee's decision to assume the rights and obligations of the debtor under the contract. Michael T. Andrew, *Executory Contracts in Bankruptcy: Understanding "Rejection,"* 59 U. Colo. L. Rev. 845, 846-47 (1988). In contrast, "rejection is a bankruptcy estate's election to decline a contract or lease asset. It is a decision *not to assume*, not to obligate the estate on the contract or lease as the price of obtaining the continuing benefits of the non-debtor party's performance." *In re Lavigne*, 114 F.3d 379, 387 (2d Cir. 1997) (quoting Andrew, 59 U. Colo. L. Rev. at 931) (emphasis added). Rejection is not a termination, but rather "gives rise to a remedy for breach of contract in the non-debtor party." *Id.*

Section 365 thus "permits the trustee . . . to use valuable property of the estate and to renounce title to and abandon burdensome property." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1098 (2d Cir. 1993) (citations and quotations omitted). Under § 365(h), if the trustee opts to reject a lease of the debtor-lessor, the lessee is given two options:

> (i) if the rejection by the trustee amounts to such a breach as would entitle the lessee to treat such lease as terminated by virtue of its terms, applicable nonbankruptcy law, or any agreement made by the lessee, then the lessee under such lease may treat such lease as terminated by the rejection; or

> (ii) if the term of such lease has commenced, the lessee may retain its rights under such lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law.

11 U.S.C. § 365(h)(1)(A)(i)-(ii).  Thus, the lessee may either treat the lease as terminated or retain its appurtenant rights under the lease.  If the lessee does the former, it may assert an unsecured claim for damages against the estate.  *Id.* § 365(g).  If it does the latter, it may offset its damages against the rent.  *Id.* § 365(h)(1)(B).

Read and applied in isolation, §§ 363(f) and 365(h) are relatively straightforward.  But when a trustee seeks to sell property free and clear of a leasehold interest, the two sections appear to require inconsistent results.  Section 363(f) grants the trustee an unqualified right to sell property unencumbered by the leasehold interest, provided its conditions are met, while § 365(h) grants the lessee an unqualified right to stay in possession if the lease is rejected.  Most courts have concluded that the two sections are indeed irreconcilable and that § 365(h) trumps § 363(f), providing the "exclusive remedy available to the debtor in an executory lease situation."  *In re LHD Realty Corp.*, 20 B.R. 717, 719 (Bankr. S.D. Ind. 1982); *see also Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 2001 WL 699881, *14 (S.D. Ind. Apr. 24, 2001), *rev'd*, 327 F.3d 537; *In re Samaritan Alliance, LLC*, 2007 WL 4162918, *4 (Bankr. E.D. Ky. Nov. 21, 2007); *In re Haskell L.P.*, 321 B.R. 1, 9 (Bankr. D. Mass. 2005); *In re Churchill Props. III, Ltd. P'ship*, 197 B.R. 283, 287-88 (Bankr. N.D. Ill. 1996); *In re Taylor*, 198 B.R. 142, 167-68 (Bankr. D.S.C. 1996); *cf. Ultimate Sportsbar, Inc. v. United States*, 48 Fed. Cl. 540, 548 (Fed. Cl. 2001) (holding in context of Fifth Amendment takings claim by lessee following a § 363(f) sale that lessee had a reasonable expectation, based upon § 365(h), "that physical

possession of lease estates by innocent tenants will not be disturbed").  On this view, a trustee's only options are to assume or reject the lease under § 365(h); either way, the lessee will have the choice to stay in possession.  In contrast, a minority of courts—including the only appellate court to directly address the issue, the United States Court of Appeals for the Seventh Circuit—have held that § 365(h) applies to the distinct scenario of lease rejections, not property sales.[6] *Qualitech*, 327 F.3d at 548; *In re Downtown Athletic Club of New York City, Inc. (Cheslock-Bakker & Assocs., Inc.)*, 2000 WL 744126, *4-5 (S.D.N.Y. June 9, 2000); *In re R.J. Dooley Realty, Inc.*, 2010 WL 2076959, *6-8 (Bankr. S.D.N.Y. May 21, 2010).  On this view, if the trustee chooses to sell property, § 363(f) controls and the trustee may sell free and clear of a leasehold interest.

Advocates of the majority interpretation generally make three arguments.  First, "it is a commonplace of statutory construction that the specific governs the general."  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (citation omitted).  And since § 365(h) specifically addresses the rights of non-debtor lessees in bankruptcy, it should govern over the general provisions of § 363(f).  *See, e.g.*, *In re Churchill Props.*, 197 B.R. at 288 (citations omitted); *In re Taylor*, 198 B.R. at 164-65.  Second, the legislative history of § 365(h) evinces a congressional intent to protect lessees when a lessor files for bankruptcy.  *See, e.g.*, *In re Taylor*, 198 B.R. at 165-66 (describing legislative history in detail); *see also In re LHD*, 20 B.R. at 719 (noting that through § 365(h), Congress "afford[ed] the debtor the benefit of rejecting an undesirable lease while at the same time protecting the property rights of the lessee") (citations omitted).  Third, if § 363(f) could be used to sell property free and clear of leasehold interests,

---

[6] Some courts have taken a middle ground, holding that the two sections are irreconcilable but declining to adopt a *per se* rule in favor of weighing the interests in each case to determine which section should control.  *See, e.g.*, *In re Spanish Peak Holdings II LLC*, 2014 WL 929701, *18 (Bankr. D. Mont. Mar. 10, 2014); *In re Bedford Square Assocs., L.P.*, 247 B.R. 140, 141, 145-46 (Bankr. E.D. Pa. 2000).

the protections of § 365(h) "would be nugatory."  *In re Churchill Props.*, 197 B.R. at 288; *see also In re Haskell*, 321 B.R. at 9 ("eviscerated"); Robert M. Zinman, *Precision in Statutory Drafting: The Qualitech Quagmire and the Sad History of § 365(h) of the Bankruptcy Code*, 38 J. Marshall L. Rev. 97, 106-18 (2004) (demonstrating that Congress has consistently reaffirmed the rights of lessees under § 365(h) and arguing that such acts are "inconsistent with the notion that Congress intended that the landlord could easily avoid these protections by employing § 363 in lieu of § 365").

The rationale for the minority interpretation was succinctly stated in *Cheslock-Bakker*: "[S]ection 365(h) applies when a debtor-lessor remains in possession of its property and rejects a lease, not when the debtor-lessor sells property subject to an interest (such as a lease) free and clear of that interest pursuant to Section 363.  Thus, when the debtor-lessor sells property subject to a lease free and clear of that lease pursuant to Section 363(f), the Court will not apply Section 365(h)."  2000 WL 744126, *4.  The Seventh Circuit expounded upon this view in *Qualitech*, offering three arguments in support.  First, statutory terms must be construed according to their common meaning, and § 363(f) plainly authorizes the sale of property free and clear of *any* interest if its conditions are satisfied.  327 F.3d at 544-46.  That neither section cross-references the other further suggests that the broad grant of authority under § 363(f) is not limited by § 365(h).  *Id.* at 547; *cf.* 11 U.S.C. § 363(l) (providing, in context of a different subset of § 363 sales, that such sales are "[s]ubject to the provisions of section 365").  Second, courts should construe statutory provisions so as to avoid conflicts when possible, and § 365(h) can be read in harmony with § 363(f) because it is limited by its terms to "rejection" and does not apply to sales:

> [N]othing in the express terms of section 365(h) suggests that it
> applies to any and all events that threaten the lessee's possessory
> rights.  Section 365(h) instead focuses on a specific type of

> event—the rejection of an executory contract by the trustee or
> debtor-in-possession—and spells out the rights of parties affected
> by that event.  It says nothing at all about sales of estate property,
> which are the province of section 363.

327 F.3d at 544, 547 (citations omitted).  Finally, lessees are already afforded protected in

§ 363(f) sales by the adequate protection requirement of § 363(e).  *Id.* at 547-48.  Thus, the court

reconciled §§ 363(f) and 365(h) as follows:

> Where estate property under lease is to be sold, section 363 permits
> the sale to occur free and clear of a lessee's possessory interest—
> provided that the lessee (upon request) is granted adequate
> protection of its interest.  Where the property is not sold, and the
> debtor remains in possession thereof but chooses to reject the
> lease, section 365(h) comes into play and the lessee retains the
> right to possess the property.

*Id.* at 548.

The minority interpretation has certain advantages over the majority view.  It avoids

carving out a category of interests from § 363(f), adheres to that section's plain meaning, and

attempts to construe the statute harmoniously.  At the same time, however, it arguably results in

the effective repeal of § 365(h), allowing a lessor to evade its protections simply by selling

property free and clear without a formal rejection of the lease.  Moreover, it is not clear what

happens when § 365(h) is expressly implicated.  *Cheslock-Bakker* and *Qualitech* conveniently

both involved situations where a free and clear sale occurred without any formal assumption or

rejection taking place.  *Qualitech*, 327 F.3d at 547 (construing the failure of the trustee to timely

assume the lease as a "repudiation" rather than a rejection that would have triggered § 365(h));

*Cheslock-Bakker*, 2000 WL 744126, *4 (distinguishing a prior, arguably contrary, case on the

basis that there "the court was addressing whether property could be sold free and clear *after the*

*rejection* of unexpired leases by a trustee or debtor-in-possession in the context of Section

365(h), not whether property can be sold free and clear under Section 363") (emphasis added).

Similarly, most courts adopting the minority interpretation have simply held that a § 363(f) sale made without any formal assumption or rejection of the lease extinguishes the lessee's rights under § 365(h). *See, e.g.*, *In re Ng*, 2007 WL 4365564, *1 (Bankr. N.D. Cal. Dec. 13, 2007); *In re Hill*, 307 B.R. 821, 825-26 (Bankr. W.D. Pa. 2004).  In such cases, it may be plausible to argue that there is no conflict because § 365(h) is inapplicable by its own terms.  However, in considering only the "easy" case where § 365(h) is never triggered in the first place, the minority interpretation skirts the purported conflict and thus fails to offer a real solution.[7]

This is a case in point.  The Plan and Sale Approval Order unambiguously invoke *both* §§ 363(f) and 365(h).  (Plan §§ 1.23, 1.37, 4.1, 6.1; Sale Approval Order 2, 5.)  Because § 365(h) has been triggered, *Qualitech* and its progeny offer little assistance, and the concerns underlying the majority view are front and center.  The Creditor attempts to make sense of the case law by arguing that the procedural posture of a case—whether a trustee explicitly rejects a lease by the time of a sale—is critical.  *See In re Zota Petroleums, LLC*, 482 B.R. 154, 163 (Bankr. E.D. Va. 2012) (concluding that where "the transaction was titled as a sale free and clear *and* an assumption and assignment, and all parties had notice therefore that the provisions of § 365 were thus implicated," the "dual nature of the transaction" controls, and § 365(h) governs).  On this view, if a trustee explicitly rejects a lease by the time of the sale, he triggers the protections for lessees set forth in § 365(h), but if there is no timely rejection, § 363(f) permits a free and clear sale because § 365(h) is irrelevant.  This reading may reconcile the *outcomes* in the case law, but it does not address the underlying interpretive arguments.  The majority can still argue that

---

[7] Presumably, the minority interpretation holds that even when § 365(h) has been expressly triggered, § 363(f) governs because it specifically addresses the sale of property.  This does not reconcile the provisions, but merely accepts the majority's premise that there is a conflict and differs on which section ought to prevail.

§ 363(f) will be used to undermine the protections of § 365(h), and the minority can still assert that the sections ought to be read harmoniously (at least when possible).

The purported conflict between §§ 363(f) and 365(h) is amenable to resolution if one first considers the role of § 365(h) in isolation.  The commencement of a bankruptcy case results in the creation of an estate that consists, *inter alia*, of "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  The estate becomes the assignee of the debtor's property by operation of law, and the nature and extent of the estate's interest in property is generally coextensive with the debtor's interest, as determined under applicable nonbankruptcy (state) law.  *In re Prudential Lines Inc.*, 928 F.2d 565, 569 (2d Cir. 1991) (citations omitted).  While the default rule is that the estate succeeds to the property of the debtor, executory contracts and unexpired leases are treated differently because they involve future obligations on the part of the debtor.  If the estate were automatically bound to such contracts, it could be burdened with unprofitable agreements that would thwart the goals of bankruptcy.  The purpose of the assume-or-reject power is to avoid burdening the estate with such contracts by allowing it to decide which contracts to assume.  Andrew, 59 U. Colo. L. Rev. at 856-66 (discussing the evolution of the power).

Leases presents special complications due to their dual-asset nature.  A lease is both a conveyance of an interest in property and a contract.  *219 Broadway Corp. v. Alexander's, Inc.*, 46 N.Y.2d 506, 509 (1979) (citation omitted).  Consequently, the lessee receives both a property interest—the estate for years (*i.e.*, the right to possess the property for the term of the lease)—as well as various other rights and obligations under the lease (*e.g.*, the rights to heat and water, the obligation to pay rent).  The lessor, in turn, has various corresponding rights and obligations under the lease.  The lessor also has a reversion—the right to possess the property at the end of

the lease term.  Rather than a product or consequence of the lease, the reversion is simply what remains of the lessor's fee simple interest after it conveys the estate for years to the lessee.

As with other executory contracts, a lease of a debtor-lessor could undermine the bankruptcy process if the lessor's obligations under the lease outweigh the benefits to the estate. Accordingly, the Code empowers the trustee to decline to assume—or "reject"—the lease.  As previously noted, rejection is not termination.  It is merely the trustee's decision not to obligate the estate to an unprofitable agreement.  As a practical matter, rejection of a lease frees the estate from the debtor-lessor's obligations thereunder, such as providing heat, water, and electricity. *See, e.g.*, *In re Flagstaff Realty Assocs.*, 60 F.3d 1031, 1034 (3d Cir. 1995) ("The primary function of rejection is to allow a debtor-lessor to escape the burden of providing continuing services to a tenant.") (citation and quotations omitted).  It also means, however, that the estate cannot enjoy the benefits of the lease—namely, the right to rent.

This raises a question as to whether rejection terminates or otherwise affects the *lessee's* rights under the lease, such as the right to continued possession.  The predecessor to § 365(h)— § 70B of the 1898 Bankruptcy Act—clarified that while the trustee was empowered to make the lease unenforceable against the estate through rejection, this power did not affect the lessee's "estate."  *See* 11 U.S.C. § 110(b) (repealed 1978) ("[A] rejection of the lease or any covenant herein by the trustee of the lessor does not deprive the lessee of his estate."); *see also In re Stable Mews Assocs.*, 35 B.R. 603, 604 (Bankr. S.D.N.Y. 1983) (noting that § 70B recognized the interests of creditors and debtors by permitting rejection, but "balanced that power and recognized the competing interests of tenants" by "reject[ing] the notion that the estate should be benefitted by removal of the tenant").  This purpose was reiterated in the House and Senate Reports to the 1978 version of § 365(h), which stated: "Thus, the tenant will not be deprived of his estate for the term for which bargained."  Senate Rep. No. 95-989, 95th Cong., 2d Sess.

(1978); House Rep. No. 95-595, 95th Cong., 2d Sess. (1977).  In response to confusion over

what the "estate" entails, Congress amended § 365(h) to its current form, which describes the

types of rights that are "appurtenant to the real property."  *See* Section-by-Section Analysis to the

Bankruptcy Reform Act of 1994, 140 Cong. Rec. H10752-01 (Oct. 4, 1994) ("This section

clarified section 365 of the Bankruptcy Code to mandate that lessees cannot have their rights

stripped away if a debtor rejects its obligations as a lessor in bankruptcy . . . .  This section will

enable the lessee[] to retain its rights that [are] appurtenant to its leasehold.  These rights include

the amount and timing of payment of rent or other amounts payable by the lessee, the right to

use, possess, quiet enjoyment, sublet, and assign."); *see also* Zinman, 38 J. Marshall L. Rev. at

115-18 (describing legislative history of 1994 amendment as response to judicial divergence over

what rights constituted lessee's "estate").  Section 365(h) thus recognizes that the trustee's power

to reject the lease does not affect the lessee's appurtenant rights, such as the right to continued

possession at the existing rent.

    Three conclusions follow from the foregoing.  First, at the commencement of the

bankruptcy case, the estate acquires two relevant interests: (i) the lessor's reversion, and (ii) the

lease.  Although the latter is subject to assumption or rejection, the former is not.[8]  Second, the

power to assume or reject does not alter the appurtenant rights of the lessee under the lease.

Thus, whether the trustee assumes, rejects, or does nothing with respect to the lease, the lessee

retains such rights.[9]  *See, e.g.*, *In re Scharp*, 463 B.R. 123, 129 (Bankr. C.D. Ill. 2011) (noting

_____

[8] There is some dispute as to whether the lease automatically vests in the estate upon commencement of the estate but is unenforceable against the estate absent assumption, or whether the lease does not vest in the estate absent assumption.  *See In re Taylor*, 198 B.R. at 158-59 (describing the competing views).  On either view, however, the reversion vests in the estate upon commencement of the case, providing an interest in the property that could theoretically support a free and clear sale.

[9] In contrast, the trustee's decision to assume, reject, or do nothing as to the lease does affect the lessee's *non*-appurtenant rights and its remedies for breach.  In the event of assumption, the

that rejection and "abandonment" by the trustee—that is, "the trustee's failure to reject [or assume] the Lease"—"both have the effect of removing a lease from property of the estate"). Third, and accordingly, nothing in § 365(h)—which simply preserves the lessee's appurtenant rights in the event of rejection—precludes the trustee from terminating such rights if so empowered under another provision of the Code.[10]  *See* Andrew, 59 U. Colo. L. Rev. at 904-05. And since § 363(f) is such a power, the trustee theoretically can sell property free and clear of the lessee's appurtenant rights.

Understood in this manner, §§ 365(h) and 363(f) are consistent.  The former does not grant the lessee special rights; it protects the lessee's existing appurtenant rights in the event that the trustee exercises its rejection power.  The latter, in turn, authorizes the trustee to sell property free and clear of any interest, including the lessee's appurtenant rights, but only if one of its five

---

"expenses and liabilities incurred [by the estate in administering the lease as lessor] may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate." *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531-32 (1984) (citations omitted).  In the event of rejection, the lessee may make a claim in bankruptcy for damages arising from the breach, but only as a general unsecured creditor.  *Id.* at 531.  "In the unlikely event that the contract is neither accepted nor rejected, it will 'ride through' the bankruptcy proceeding and be binding on the debtor even after a discharge is granted."  *Id.* at 546 n.12 (Brennan, J., concurring and dissenting in part) (citations omitted).  That is, since the lease is not part of the bankruptcy, it will not be subject to discharge, but rather remains enforceable against the debtor outside of bankruptcy.

Notwithstanding these variations, the important point is that the trustee's decision whether and how to exercise the assume-or-reject power does not affect the lessee's appurtenant rights under the lease.  Consequently, it is irrelevant for present purposes whether the failure to timely assume the lease should be deemed a *de facto* rejection triggering § 365(h), or instead (non-rejection) abandonment.  *Compare Qualitech*, 2001 WL 699881, *9 (failure to timely assume or reject is *de facto* rejection), *with In re MMH Auto. Grp. LLC*, 385 B.R. 347, 362-63 (Bankr. S.D. Fla. 2008) (rejecting *de facto* rejection rule).  In either case, the lessee retains its appurtenant rights under the lease—including the right to possession—and the estate retains its reversion.

[10] As noted, the lessor's reversion is not created by the lease.  It is the remainder of the lessor's property interest, which exists after the lessor conveys an estate for years to the lessee.  Thus, whatever the fate of the lease, the reversion is unaffected.  *Cf. Matter of Minges*, 602 F.2d 38, 41 (2d Cir. 1979) (noting that "[a] lease is partly the conveyance of an estate, which is deemed fully executed once the tenant takes possession").

grounds permits extinguishment of such rights.  Thus, § 363(f) must necessarily take the lessee's rights under the lease into account.  *In re MMH Auto. Grp. LLC*, 385 B.R. 347, 365-66 (Bankr. S.D. Fla. 2008) (citations omitted); James H. Millar, *Treatment of Leases Under Sections 363(f) and 365(h) of the Bankruptcy Code*, 2013 Ann. Surv. Bankr. L. 11 (2013) ("[U]nder any scenario, the lessee's rights under the lease must be respected.").

Consequently, extending § 363(f) to leasehold interests does not undermine legislative intent, because the intent is to preserve the lessee's appurtenant rights in the event of rejection, not to grant the lessee absolute rights that it would not enjoy outside of bankruptcy.  126 Cong. Rec. 31,917 (1980) (statement of Congressman Edwards) ("Section 365(h) is not intended to provide the debtor's lessees rights that would not otherwise exist outside of bankruptcy."); *In re Scharp*, 463 B.R. at 132-33 (holding that § 365(h) does not create a "substantive 'bankruptcy right' of possession that trumps state law to the contrary" because the reference to "applicable nonbankruptcy law" means it "preserves certain tenant rights but it does not enhance them"); *In re MMH*, 385 B.R. at 366 (same).  Nor is it necessary to rely upon an artificial distinction between "rejection" and "repudiation."  Whether there is formal rejection or not, the lessee's appurtenant rights under the lease must be respected.

This interpretation also allows for the best reading of the Code as a whole.  If § 365(h) provides lessees with an absolute right to possession that trumps the trustee's power to sell under § 363(f), it is difficult to see why the lessee's right does not also trump the trustee's other powers, such as the power to avoid interests as a bona fide purchaser, 11 U.S.C. § 544(a)(1), or to avoid interests that were fraudulently transferred by the debtor, *id.* § 548(a)(1); *see also In re Sheets*, 277 B.R. 298, 305-06 (Bankr. N.D. Tex. 2002) (collecting cases and concluding that § 544(a) applies to interests protected under § 365(h) because the sections can be construed harmoniously); *In re Webber Lumber & Supply Co., Inc.*, 134 B.R. 76, 80 (Bankr. D. Mass.

1991) (holding that interests protected under § 365(h) and (i) are avoidable under § 544(a)).

"Rejection of a lease—a power supposedly provided to enhance the debtor's estate—would then

morph into a 'superman' right of a lessee to override every other provision in the Bankruptcy

Code, perhaps to the *detriment* of the estate."  Millar (emphasis added); *see also In re MMH*, 385

B.R. at 364-65 (rejecting the majority interpretation because it would "lead to an absurd result—

elevating tenants of rejected leases, without exception, to a protected status they might not enjoy

in the absence of rejection, and . . . at the expense of other creditors of the estate").  The majority

interpretation proves too much.  The purpose of § 365(h) is to clarify that rejection is not an

avoidance power—not to give the lessee rights that may never be avoided by some other means.

　　　　In sum, §§ 363(f) and 365(h) should be read harmoniously as addressing distinct issues.

Whether there is a rejection triggering § 365(h) or not, the lessee may retain its appurtenant

rights under the lease, which must be respected in any subsequent action by the trustee, including

a free and clear sale.  Here, because the TGM Lease was rejected in a timely manner, TGM was

entitled to retain its appurtenant rights under the lease pursuant to § 365(h).  That does not mean,

however, that such rights are unavoidable.  Instead, the Court must assess whether there is any

basis for a sale free and clear of TGM's rights under § 363(f).

### B.　　Sale of the Property Free and Clear of the TGM Lease

　　　　The bankruptcy court did not state what grounds, if any, would permit a sale free and

clear of TGM's rights, and TGM argued that none would.[11]  Dishi contends that the sale is

---

[11] It is not even clear whether the bankruptcy court approved the sale free and clear of TGM's
rights, or instead approved the sale free and clear of interests other than such rights.  (*Compare*
Sale Approval Order 2 ("[T]he Debtor is directed to sell, transfer and convey the Property to the
Purchaser as set forth in the Plan, free and clear of all liens, encumbrances."), 5 ("[A]s adequate
protection for the sale of the Property free and clear of the TGM Lease, [TGM] may remain in
possession of the Property pursuant to sections 361(3) and 363(e)."), *with id.* at 5 ("[TGM's]
rights under section 365(h) of the Bankruptcy Code, including, but not limited to, the right to
elect to remain in possession of the Property is fully preserved, notwithstanding the Debtor's sale
of the Property and the rejection of the lease.").  This ambiguity stems, at least in part, from the

authorized under paragraphs (1) and (5), which the Creditor disputes.  The parties agree that paragraphs (2), (3), and (4) do not authorize the sale: TGM clearly has not consented, the lease is not a lien, and the validity of the lease is not in question.

### 1. Section 363(f)(1)

Paragraph (1) authorizes the trustee to sell the Property free and clear of TGM's appurtenant rights if "applicable nonbankruptcy law permits sale of such property free and clear of such interest."  The parties dispute the meaning of "applicable nonbankruptcy law."  Dishi contends that it refers to New York foreclosure law, which allows a mortgagee to extinguish a commercial leasehold interest that is junior or subordinate to the mortgage.  *See, e.g.*, *Dime Sav. Bank of N.Y., FSB v. Montague St. Realty Assocs.*, 90 N.Y.2d 539, 543-44 (1997); *220 W. 42 Assocs. v. Ronbet Newmark Co.*, 375 N.Y.S.2d 255, 259 (Sup. Ct. 1975), *modified*, 385 N.Y.S.2d 304, 305 (2d Dep't), *aff'd*, 40 N.Y.2d 1000 (1976).  Here, a foreclosure of the Mortgage would extinguish the TGM Lease because the lease contains a subordination clause.  (BkD No. 45, Ex. D at 3.)  The Creditor contends that applicable nonbankruptcy law is New York law governing the voluntary transfer of property, which provides that the purchaser takes property subject to a lease if he had actual or constructive notice of its existence.  *See, e.g.*, *Reltron Corp. v. Voxakis Enters., Inc.*, 57 A.D.2d 134, 138 (4th Dep't 1977); *Walker v. 18th St. Holding Corp.*, 44 N.Y.S.2d 866 (1st Dep't 1943) (citing *Phelan v. Brady*, 119 N.Y. 587) (1890)).  Since Dishi had notice of the TGM Lease, it would take the Property subject to TGM's rights.[12]

---

disjunctive nature of the holding.  The Court assumes that one basis for the holding is the bankruptcy court's conclusion that § 365(h) preserves TGM's rights notwithstanding the fact that § 363(f) was satisfied with respect thereto.

[12] Although Dishi states that it believed the sale would not be subject to the TGM Lease because the lease was rejected, this constitutes lack of notice as to the legal consequences of rejection, not ignorance of the lease's existence.

The starting point of the analysis is, as always, the statutory text.  Notably, paragraph (1) is not limited by its terms to "voluntary" sales.  It is, however, arguably limited to actions that could be taken by the trustee: "The *trustee* may sell property . . . free and clear of any interest . . . if . . . applicable nonbankruptcy law permits *sale* . . . ."  11 U.S.C. § 363(f)(1) (emphasis added).  The question is whether "permits sale" should be interpreted passively (and broadly) to refer to instances of free and clear sale by *any* person, or actively (and narrowly) to refer only to instances where a free and clear sale could be accomplished the trustee.  The trustee is just the representative of the estate, *id.* § 323, which, in turn, is the assignee of the debtor's property interests.  Therefore, if one adopts the narrow interpretation, paragraph (1) would allow sale free and clear only when the owner of the property could accomplish such a sale under applicable nonbankruptcy law.

Regardless of how one reads "permits sale," however, paragraph (1) is clearly limited to free and clear sales permitted under "*applicable* nonbankruptcy law."  Foreclosure is "nonbankruptcy law," but so too is the law governing voluntary transfers.  The question is which is "applicable," meaning "fit, suitable, or right to be applied."  Webster's Third International Dictionary 105.  Because it cannot be both—or else paragraph (1) would be internally inconsistent—the Court must consider which law is more analogous to free and clear sales in bankruptcy.[13]

At the outset, it is noteworthy that the Code distinguishes between bankruptcy and foreclosure proceedings.  Section 362(a) automatically stays other proceedings against the debtor upon commencement of the case.  *See, e.g.*, *In re Warburton Ave. Realty Corp.*, 127 B.R. 333,

---

[13] For this reason, the Court is unpersuaded by the argument that paragraph (1) should be read to refer to foreclosure law because bankruptcy proceedings ought to mirror what would happen outside of bankruptcy.  This merely begs the question of what scenario bankruptcy should try to emulate.

334 (Bankr. S.D.N.Y. 1991) (holding that involuntary Chapter 11 bankruptcy was not

"tantamount to foreclosure" for this reason); *Coppola v. Sup. Ct.*, 211 Cal. App. 3d 848, 869 (Ct.

App. 1989) (same, within context of free and clear sales).  Indeed, debtors frequently file

bankruptcy actions at the last minute for the very purpose of avoiding the less favorable

consequences of foreclosure.  *See, e.g.*, *In re Warburton Ave.*, 127 B.R. at 335-36.  Bankruptcy is

also "more than simply a two-party dispute" that gives a particular mortgagee priority over other

interest holders.  *See, e.g.*, *Les Placements v. Rosenberg*, 1997 WL 1048897, *4 (E.D.N.Y.

1997).  Whereas the mortgagee can force a sale through foreclosure, the decision to sell in

bankruptcy rests solely with the trustee, who may approve a sale even over the mortgagee's

objections.  *Coppola*, 211 Cal. App. 3d at 869-71.  Moreover, the purpose of the sale is not "to

ensure that the sale produces enough proceeds to satisfy the creditor seeking the sale," but rather

to provide the greatest benefit to all parties.  *Id.* at 872-73.  Finally, pursuant to § 365, a free and

clear sale does not extinguish every interest junior or subordinate to the mortgage, but rather

allows for the assumption of beneficial arrangements, thereby increasing the value of the

property to be sold.  As then-District Judge Hamilton recognized in *Qualitech*:

> [A] sale of assets of a going (but floundering) concern in
> bankruptcy is not a foreclosure sale. . . .  By purchasing assets
> rather than going through a foreclosure, the buyer obtained a going
> business and some important benefits, including the right to have
> the debtor assume any *favorable* contracts or leases and assign
> those to the buyer.  Having chosen that form of transaction, the
> buyer must take the bitter with the sweet.

2000 WL 699881, *15.  In contrast, a free and clear sale is analogous to a voluntary sale because

the owner of the asset (the trustee/estate) has discretion whether and in what manner to sell

property, and the goal is to maximize the benefit to the estate, not to a particular mortgagee.

Correspondingly, if the mortgagee believes that its interest will not be adequately protected in

bankruptcy, it may seek leave from the stay to commence (or continue) foreclosure proceedings. *Id.*

In light of these substantial and material differences, the Court holds that paragraph (1) refers not to foreclosure sales, but rather "only to situations where the owner of the asset may, under nonbankruptcy law, sell an asset free and clear of an interest in such asset." *In re Jaussi*, 488 B.R. 456, 458 (Bankr. D. Colo. 2013). Since Dishi had notice of the TGM Lease, the sale of the Property by the trustee to Dishi would be subject to the lease under New York law. Accordingly, paragraph (1) does not authorize a sale free and clear of the TGM Lease.

### 2.    Section 363(f)(5)

Paragraph (5) authorizes the trustee to sell the Property free and clear of the TGM Lease if "[TGM] could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of [its] interest." Dishi cites the possibility of foreclosure by the Creditor as such a proceeding. *See, e.g.*, *In re Boston Generating, LLC*, 440 B.R. 302, 333 (Bankr. S.D.N.Y. 2010) (citation omitted); *In re Jolan, Inc.*, 403 B.R. 866, 870 (Bankr. W.D. Wash. 2009). Like paragraph (1), paragraph (5) can plausibly be read narrowly or broadly. Under the narrow interpretation, it refers only to those situations where the trustee, as owner of the property, could compel the interest holder to accept a money satisfaction for its interest. 11 U.S.C. § 363(f), (f)(5) ("The *trustee* may sell property . . . free and clear of any interest in such property . . . if . . . such entity could be compelled . . . .") Under the more expansive interpretation, the passive language of "could be compelled" implies that paragraph (5) is not limited to actions by any particular actor. In this case, however, when the passive language is read literally, paragraphs (1) through (4) become superfluous. If paragraph (5) encompasses foreclosure actions by third parties, there is no reason it should not encompass other hypothetical actions by third parties such as eminent domain or foreclosure of tax liens. *See, e.g.*, *In re Smith*, 2014 WL 738784, *2 (Bankr. D. Ore.

Feb. 26, 2014) (listing various hypothetical proceedings that purportedly satisfy paragraph (5)). If that is the case, it is difficult to see when paragraph (5) will *not* permit a free and clear sale.

In contrast, the narrow interpretation provides a limited role for paragraph (5), but avoids rendering the remaining paragraphs mere surplusage.  *See In re PW*, 391 B.R. 25, 44 (B.A.P. 9th Cir. 2008) ("[A]ny interpretation of paragraph (5) must satisfy the requirement that the various paragraphs of subsection (f) work harmoniously and with little overlap.").  Other courts have therefore limited the scope of paragraph (5) to those scenarios where the trustee or debtor, not any third party, is the actor.  *See, e.g.*, *In re Ricco, Inc.*, 2014 WL 1329292, *3 (Bankr. N.D. W. Va. Apr. 1, 2014) ("[T]he only logical interpretation of . . . § 363(f)(5) is that the statute requires that the trustee or debtor be the party able to compel monetary satisfaction for the interest which is the subject of the sale.") (quoting *In re Haskell*, 321 B.R. at 9); *In re Scott*, 2013 WL 4498987, *2-3 (Bankr. E.D. Ky. Aug. 21, 2013) (paragraph (5) does not refer to foreclosure proceedings because they are initiated by creditors, not the debtor); *In re Haskell*, 321 B.R. at 9 (paragraph (5) does not encompass eminent domain proceedings because the trustee must be the party capable of compelling the interest holder to accept a money satisfaction).  This Court agrees that paragraph (5) should be read to reach only those legal or equitable proceedings that could be brought by the trustee as owner of the property.  A foreclosure by a third-party mortgagee is not such a proceeding.  And as Dishi has not suggested any other hypothetical proceedings by which the trustee could compel TGM to accept a money satisfaction in exchange for extinguishment of its interest, the Court holds that paragraph (5) does not authorize a sale free and clear of TGM's rights.  *In re Daufuskie Island Props., LLC*, 431 B.R. 626, 637 (Bankr. D.S.C. 2010) (noting that the burden is on the proponent of the sale to identify the basis for the sale).

### C.       Adequate Protection Under Section 363(e)

Dishi also argues that the bankruptcy court abused its discretion in holding, in the alternative, that TGM is entitled to continued possession as adequate protection of its interest. Dishi argues that the court should have awarded a sum of money to TGM, or possession for a limited term, and that because Dishi reasonably believed that the sale would not be subject to the TGM Lease it is unfair to impose the entire burden of adequate protection upon it. Dishi does not cite any authority in support of the theory that a bankruptcy court must "fairly" allocate the burden of adequate protection. On the contrary, § 363(e) is focused upon protecting the entity whose interest is threatened, not other creditors or the purchaser. Section 363(e) directs that the court "*shall* prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest," and § 361 defines such protection, *inter alia*, as such "relief . . . as will result in the realization by such entity of the *indubitable equivalent* of such entity's interest." 11 U.S.C. §§ 361(3), 363(e) (emphases added). Absent any authority to the contrary, the Court must follow the plain language of the Code, which requires the bankruptcy court to provide "adequate protection," which may include the indubitable equivalent of the interest, namely, continued possession.

Nor was the bankruptcy court's decision unprecedented or otherwise unreasonable. Where it is improbable that the lessee will receive any compensation for its interest from proceeds of the sale, and it is difficult to value the lessee's unique property interest, other courts have similarly concluded that "adequate protection can be achieved only through continued possession of the leased premises." *In re Haskell*, 321 B.R. at 10. In light of the Debtor's capital structure and the nature of the interest at stake, the Court agrees that continued possession is necessary to adequately protect TGM's interest. Even if it did not, however, the bankruptcy

court did not abuse its discretion in so holding.  Accordingly, whether a sale free and clear of the

TGM Lease was permissible or not, TGM is entitled to continued possession under § 363(e).

**IV.     Conclusion**

For the foregoing reasons, the September 25, 2013 Order of the bankruptcy court is

AFFIRMED.

The Clerk of Court is directed to enter judgment accordingly.

Dated: New York, New York
      May 28, 2014

                                             J. PAUL OETKEN
                                   United States District Judge